## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES GILLESPIE** | : | |
| | : | **CIVIL ACTION –LAW** |
| **PLAINTIFF,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **AKAL EXPRESS, INC. and** | : | **NO:** |
| **CARLOS PENA,** | : | |
| | : | |
| **DEFENDANTS.** | : | |

## COMPLAINT

AND NOW COMES the Plaintiff, JAMES GILLESPIE, by and through his legal counsel, Fellerman & Ciarimboli Law, P.C., to hereby complain against the Defendants, AKAL EXPRESS, INC. and CARLOS PENA, and in support thereof aver as follows:

## PARTIES

1.     Plaintiff, James Gillespie, is a competent adult individual who resides at 68 Second Avenue, Kingston, Luzerne County, Pennsylvania.

2.      Defendant, Akal Express, Inc. (hereinafter "Akal") is a corporation organized and existing under the laws of the State of Kansas with a principal place of business at 13323 West 129th Street, Overland Park, Kansas 66213.

3.      Defendant, Carlos Pena (hereinafter "Defendant Pena"), is a competent adult individual, who upon information and belief and at all times relevant hereto, resides at 922 Delaware Street, Levenworth, Kansas, 66048.

4.      Akal's U.S. D.O.T. number is, upon information and belief, 1803439.

5.      Akal's MC (Motor Carrier) Number issued by the Federal Motor Carrier Safety Administration is, upon information and belief, MC-655666.

6.      At all times relevant hereto, Akal was an authorized interstate motor carrier authorized to transport goods in interstate commerce and in the Commonwealth of Pennsylvania pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"), or both.

7.      Accordingly, Akal was subject to all state and federal laws, statutes regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation the Pennsylvania Motor Vehicle Code and the Federal Motor Carrier

Safety Regulations ("FMCSR") subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

8.      In order to obtain a DOT number, Akal had to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that it has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that it will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

9.      More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Akal:

    a.  had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b.  can produce a copy of the FMCSRs;

    c.  had and will have in place a driver safety training/orientation program;

    d.  had and will have prepared and maintain an accident register;

    e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

    f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

g. is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h. must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

10.   Representatives of Defendant, Akal, swore under the penalty of perjury to comply with the above "Safety Certifications."

11.   Representatives of Akal swore under the penalty of perjury to comply with the above "Safety Certifications."

12.   At all times relevant hereto, Defendant Pena was a Class A licensed motor vehicle operator driving a 2010 Peterbilt with Kansas Registration 177011 (hereinafter "Peterbilt"), which was owned, leased, assigned, and/or operated by Defendant, Akal.

13.   Accordingly, Defendant Pena was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers including, without limitation, The Pennsylvania Motor Vehicle Code and the FMCSRs set forth in 49 C.F.R. parts 350-398.

14.   At all times relevant hereto, the Peterbilt was owned, leased, assigned, and/or operated by Akal and was being operated by Defendant Pena with the consent of the Defendant and for their financial benefit.

15.     At all times relevant hereto, Defendant Pena was employed and/or contracted to perform services for Akal under Defendant's operating authority and was subject to Defendant's control or right to control, such that Defendant should be considered his actual and statutory employer and therefore vicariously liable for Defendant Pena's negligence and recklessness.

16.     At all times relevant hereto, Defendant Pena was employed and/or contracted to perform services for and was operating a commercial motor vehicle for Akal in its affairs and was subject to Defendant's control or right of control such that Defendant should be considered his employer and therefore vicariously liable or Defendant Pena's negligence and recklessness.

17.     Upon information belief, and at all relevant times hereto, Defendant Pena was the agent, servant, workman, and/or employee of Akal and was operating under the course and scope of his employment with Akal.

18.     At all relevant times hereto, Akal was liable for the actions and/or inactions of Defendant Pena.

19.     At all relevant times, Akal was liable for the actions and/or inactions of Defendant Pena as though the actions and/or inactions were performed by the entities themselves.

20.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 67 Pa. Code §23, et. seq.

21.     At all relevant times, Plaintiff acted with due care and in no way caused or contributed to the crash that forms the basis of this lawsuit.

## JURISDICTION AND VENUE

22.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and the Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

23.     Venue is appropriate in this court pursuant to 28 U.S.C. §1391(b)(2) because the motor vehicle crash giving rise to this action occurred in Berks County, Pennsylvania.

## FACTUAL BACKGROUND

24.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

25.     On September 2, 2020, Defendant Pena was the operator of a 2010 Peterbilt Tractor Trailer, which was owned, leased, and/or assigned by Defendant, Akal.

26.     On the aforesaid date, Defendant Pena was operating the Peterbilt at or near the intersection of Kiwanis Boulevard and Rotary Drive, West Hazleton, Luzerne County, Pennsylvania.

27.   At the aforesaid date, time and place Mr. Gillespie was operating a 2016 Infiniti and was also at or near the intersection of Kiwanis Boulevard and Rotary Drive, West Hazleton, Luzerne County, Pennsylvania.

28.   At the aforesaid date, time and place, Mr. Gillespie was safely operating his vehicle at this intersection when, suddenly and without warning, Defendant Pena backed his Peterbilt directly into the front of Mr. Gillespie's vehicle ("the Crash").

29.   The aforesaid Crash was caused by Defendant Pena's failure to pay attention, failure to be aware of other vehicles behind him in the roadway, and failure to keep an adequate stopping distance between his Peterbilt and the vehicles behind him in the roadway.

30.   As a result of the crash, Mr. Gillespie sustained the following injuries, including but not limited to, the following:

a.  Disc herniation at C4-C5 eccentric to the left with impression on the cord;

b.  Disc herniation at C5-C6 to the left with spurring;

c.  Narrowing at C6-C7 and C3-C4 due to spur formation;

d.  Cervical strain;

e.  Posterior lower neck pain;

f.  Aggravation of cervical degenerative disc disease;

g. Aggravation of left ulnar neuropathy;

h. Left ulnar nerve entrapment at the level of the cubital tunnel of a severe intensity;

i. Left upper extremity weakness;

j. Myofascial pain;

k. Mental anguish and distress; and

l. Other significant injuries, all of which may be permanent.

31.   At all relevant times, upon information and belief, Defendant Pena drove in such a distracted manner that he failed to observe the traffic behind him prior to impacting Mr. Gillespie's vehicle.

32.   At all relevant times, upon information and belief, Defendant Pena had a history and record of unsafe and dangerous driving.

33.   At all relevant times, Akal knew of Defendant Pena's dangerous driving record and chose to hire him anyway.

34.   This information was known and/or readily available to Akal before the Crash that seriously injured Mr. Gillespie.

35.   At all relevant times, upon information and belief, Akal knew or should have known that Defendant Pena had a propensity for violations of unsafe driving.

36.    At all relevant times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like Akal.

37.    The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

38.    Defendant was aware of the FMCSA website.

39.    Despite Defendant Pena's deplorable safety record, incompetence, and dangerous behavior, Defendant negligently, recklessly and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

40.    At all relevant times, Defendant exercised complete control over the dispatching of the Peterbilt driven by Defendant Pena, as well as the trailer being hauled at the time of the crash.

41.    At all relevant times, Defendant exercised complete control over the routing of the Peterbilt driven by Defendant Pena at the time of the crash.

42.    At all relevant times, Defendant, Akal, had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Defendant Pena should be considered an agent of Akal.

## COUNT I

### NEGLIGENCE / RECKLESSNESS

### JAMES GILLESPIE v. AKAL EXPRESS, INC.
### AS BEING VICARIOUSLY LIABLE FOR CARLOS PENA

43.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

44.     The negligence, carelessness, and/or recklessness of Akal, as being vicariously liable for the action of Defendant Pena, consisted of, but is not limited to, the following:

      a.     Failing to maintain proper and adequate control of his Peterbilt;

      b.     Failing to keep his eyes on the road at all times;

      c.     Failing to timely apply his brakes;

      d.     Failing maintain an adequate stopping distance between his Peterbilt and the vehicles behind him in the roadway;

      e.     Driving carelessly in violation of the Pennsylvania Motor Vehicle Code;

      f.     Failing to pay proper attention while operating his Peterbilt on Interstate 78;

      g.     Failing to take proper precautions in the operation of his Peterbilt so as to avoid the collisions that occurred;

      h.     Operating his Peterbilt in a negligent, careless and reckless manner without due regard for the rights and safety of Mr. Gillespie;

i.      Failing to exercise due care and caution under all of the existing circumstances;

j.      Failing to remain alert;

k.      Operating the Peterbilt in a distracted manner;

l.      Traveling at an unsafe rate of speed under the circumstances;

m.      Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of commercial motor vehicles;

n.      Failing to operate his Peterbilt in accordance with the Federal Motor Carrier Safety Regulations;

o.      Failing to properly control his Peterbilt in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

p.      Failing to make necessary and reasonable observations while operating his Peterbilt;

q.      timely evasive action to avoid the crash with Plaintiff;

r.      Violating FMCSA Regulation 383 dealing with required knowledge and skills;

s.      Consciously choosing to drive at an unsafe speed;

t.      Consciously refusing to decrease speed in response to traffic patterns then and there existing on the roadway;

u.      Consciously choosing to disregard traffic patterns then and there existing on the roadway;

v.      Violating both the written and unwritten policies, rules, guidelines and regulations of Akal Express, Inc.;

w.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

x.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

y.   Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

z.   Failing to adhere to the amount of driving hours limit;

aa.   Causing the Crash due to being on the road more than the regulated number of hours;

bb.   Operating the Peterbilt in an unsafe condition in violation of FMCSR Section 396.7; and

cc.   Acting with a conscious disregard for the rights and safety of the motoring public, including Mr. Gillespie.

45.   As a result of the above-stated acts and omissions, Mr. Gillespie suffered such harm as previously stated herein.

46.   As a direct result of the negligence of Defendant and their agents, servants, and/or employees, as described herein, Plaintiff, James Gillespie, has suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses.

47.   The economic and non-economic injuries, damages and losses suffered by Mr. Gillespie were caused solely and exclusively by the negligence of Defendant and their agents, servants and employees, as described herein, and were not caused or contributed to by any act or failure to act on the part of Mr. Gillespie.

**WHEREFORE**, Plaintiff, James Gillespie, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.00.

## COUNT II

## NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION

## JAMES GILLESPIE V. AKAL EXPRESS, INC.

48.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

49.     Defendant Akal had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

50.     Defendant had an obligation to exercise reasonable care in selecting a competent and careful driver to move and transport the load.

51.     Mr. Gillespie was seriously injured as a result Defendant Pena's unsafe driving.

52.     At all relevant times, Defendant was directly liable for the negligent and reckless hiring, supervision, and retention of its driver, Defendant Pena.

53.     The negligence, carelessness, and/or recklessness of Defendant, Akal, in the hiring, supervision and retention of Defendant Pena, consisted of the following:

a.   Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including Defendant Pena;

b.   Failing to train and/or properly train Defendant Pena prior to allowing him to operate its Peterbilt;

c.   Hiring and/or continuing to employ Defendant Pena despite the fact that he had a propensity for driving violations;

d.   Hiring and/or continuing to employ Defendant Pena despite the fact that he had a propensity for violating "Rules of the Road" and FMCSR;

e.   Failing to perform alcohol and/or drug tests after the crash;

f.   Failing to do preventable analysis as recommended by the FMCSR;

g.   Failing to have an appropriate disciplinary policy within the company;

h.   Hiring and/or continuing to employ Defendant Pena despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.   Permitting Defendant Pena to operate its Peterbilt when it knew or should have known that he was not properly qualified and/or trained;

j.   Failing to train and/or properly train Defendant Pena prior to allowing him to operate its Peterbilt;

k.   Allowing Defendant Pena to operate the Peterbilt in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

l.   Failing to adopt appropriate employee manuals and/or training procedures;

m.  Failing to enforce both written and unwritten policies of Akal Express, Inc.;

n.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Akal Express, Inc.;

o.  Failing to implement and/or enforce an effective safety system;

p.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

q.  Failing to ensure that is employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

r.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

s.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

t.  Failing to monitor and/or regulate its drivers' actions;

u.  Failing to monitor and/or regulate its drivers' hours;

v.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

w.  Failing to use a third party vendor to audit their drivers' logs, or if they did use a third party vendor, failing to use it appropriately;

x.  Failing to have policy or mechanism in place to address cumulative fatigue in its drivers;

y.  Placing more emphasis on profits than on safety of its drivers and the motor public;

z.    Knowingly violating federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles;

aa.   Failing to act upon and remedy violations of FMCSA regulation 395;

bb.   Failing to act upon and remedy violations of FMCSA regulation 383;

cc.   Failing to act upon and remedy known violations of industry standards;

dd.   Acting in conscious disregard for the rights and safety of Mr. Gillespie;

ee.   Failing to have appropriate policies and procedures with regard to the hiring of drivers;

ff.   Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

gg.   Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

hh.   Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers;

ii.   Consciously disregarding federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles; and

jj.   Violating all applicable provisions of the FMCSA.

54.    As a result of the above-stated acts and omissions, Mr. Gillespie has suffered injuries as has been previously stated herein.

**WHEREFORE**, Plaintiff, James Gillespie, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.00.

## COUNT III

## NEGLIGENT ENTRUSTMENT

## JAMES GILLESPIE V. AKAL EXPRESS, INC.

55.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

56.     Defendant Akal had a duty to use due care in choosing a careful and competent driver.

57.     Defendant Akal entrusted the Peterbilt to Defendant Pena despite the fact that Defendant Pena failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate a Peterbilt.

58.     Defendant Akal knew or should have known that Defendant Pena failed to possess the knowledge, skill, experience, available equipment and personal characteristics to transport freight and/or goods without creating an unreasonable risk to operate a Peterbilt without creating an unreasonable risk of injury to others.

59.     Because Defendant Akal entrusted the Peterbilt to an incompetent driver, Akal is liable for any negligent and/or reckless conduct of Defendant, Defendant Pena.

60.     Defendant Akal was negligent entrusting the Peterbilt to Defendant Pena, when it knew or should have known with the exercise of reasonable due care that Defendant Pena lacked the necessary skill, judgment, and/or prudence with which to operate the vehicle.

61.     Defendant Akal was negligent and/or reckless in entrusting the Peterbilt to Defendant Pena, when it knew or should have known with the exercise of reasonable care that Defendant Pena had a propensity to cause motor vehicle collisions.

62.     Defendant Akal was negligent in entrusting the Peterbilt to Defendant Pena, when it knew or should have known with the exercise of reasonable care that Defendant Pena had a propensity to violate the motor vehicle code.

63.     At all relevant times, Defendant Akal had a duty to ensure that it had appropriate hiring practices that put competent drivers behind the wheel.

64.     At all relevant times, Defendant Akal had a duty to ensure that it had appropriate policies in place to ensure that its drivers did not violate FMCSA regulation 383 "required knowledge and skill."

65.    Defendant Akal knew or in the exercise of reasonable care should have known that entrusting the Peterbilt to Defendant Pena would likely cause harm to the motoring public such as the harm that was caused on September 2, 2020 to Mr. Gillespie.

66.    Defendant Akal had a duty to entrust the Peterbilt to an attentive and skilled driver.

67.    Defendant Akal failed to ensure that it hired and retained attentive skilled drivers.

68.    Defendant Akal had an obligation and/or duty to entrust the Peterbilt to drivers who operate their vehicles in a safe manner.

69.    Mr. Gillespie was injured as a result of the Defendant Pena's unsafe driving.

70.    By entrusting the Peterbilt to Defendant Pena, Defendant Akal acted in conscious disregard to the rights and safety of Mr. Gillespie.

71.    As a result of the above-stated acts and omissions of Defendant Akal, Mr. Gillespie suffered injuries.

**WHEREFORE**, Plaintiff, James Gillespie, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.00.

**COUNT IV**

**NEGLIGENCE / RECKLESSNESS**

**JAMES GILLESPIE v. CARLOS PENA**

72.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

73.    The negligence, carelessness, and/or recklessness of Defendant, Carlos Pena consisted of, but is not limited to, the following:

   a.  Failing to maintain proper and adequate control of his Peterbilt;

   b.  Failing to keep his eyes on the road at all times;

   c.  Failing to timely apply his brakes;

   d.  Failing maintain an adequate stopping distance between his Peterbilt and the vehicles behind him in the roadway;

   e.  Driving carelessly in violation of the Pennsylvania Motor Vehicle Code;

   f.  Failing to pay proper attention while operating his Peterbilt on Interstate 78;

   g.  Failing to take proper precautions in the operation of his Peterbilt so as to avoid the collisions that occurred;

   h.  Operating his Peterbilt in a negligent, careless and reckless manner without due regard for the rights and safety of Mr. Gillespie;

   i.  Failing to exercise due care and caution under all of the existing circumstances;

   j.  Failing to remain alert;

k.  Operating the Peterbilt in a distracted manner;

l.  Traveling at an unsafe rate of speed under the circumstances;

m. Violating the applicable rules, regulations and laws pertaining to the
   safe and proper operation of motor vehicles and/or Peterbilts;

n.  Failing to operate his Peterbilt in accordance with the Federal Motor
    Carrier Safety Regulations;

o.  Failing to properly control his Peterbilt in light of the circumstances
    then and there existing, including traffic patterns existing on the
    roadway;

p.  Failing to make necessary and reasonable observations while
    operating his Peterbilt;

q.  timely evasive action to avoid the crash with Plaintiff;

r.  Violating FMCSA Regulation 383 dealing with required knowledge
    and skills;

s.  Consciously choosing to drive at an unsafe speed;

t.  Consciously refusing to decrease speed in response to traffic patterns
    then and there existing on the roadway;

u.  Consciously choosing to disregard traffic patterns then and there
    existing on the roadway;

v.  Violating both the written and unwritten policies, rules, guidelines and
    regulations of Akal Express, Inc.;

w.  Failing to apprise himself of and/or abide by the Federal Motor
    Carrier Safety Regulations;

x.  Failing to apprise himself of and/or abide by the regulations and laws
    pertaining to the operation of commercial vehicles;

y.  Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

z.  Failing to adhere to the amount of driving hours limit;

aa. Causing the Crash due to being on the road more than the regulated number of hours;

bb. Operating the Peterbilt in an unsafe condition in violation of FMCSR Section 396.7; and

cc. Acting with a conscious disregard for the rights and safety of the motoring public, including Mr. Gillespie.

74.    As a result of the above-stated acts and omissions, Mr. Gillespie suffered such harm as previously stated herein.

75.    As a direct result of the negligence of Defendant and their agents, servants, and/or employees, as described herein, Plaintiff, James Gillespie, has suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses.

76.    The economic and non-economic injuries, damages and losses suffered by Mr. Gillespie were caused solely and exclusively by the negligence of Defendants and their agents, servants and employees, as described herein, and were not caused or contributed to by any act or failure to act on the part of Mr. Gillespie.

**WHEREFORE**, Plaintiff, James Gillespie, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.00.

Respectfully Submitted,

**FELLERMAN & CIARIMBOLI LAW, P.C.**

Date: August 24, 2022

BY:   Myer S. Messinger, Esquire
Fellerman & Ciarimboli Law, P.C.
183 Market Street, Suite 200
Kingston, PA 18704
570-718-1444
*Counsel for Plaintiff*